# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DELANTE DARNELL
HIGGENBOTTOM,

                Petitioner,

v.

WARDEN MICHAEL MEISNER,

                Respondent.

Case No. 21-CV-1256-JPS

**ORDER**

## 1.    INTRODUCTION

Before the Court is Petitioner Delante Darnell Higgenbottom's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. The Court screened the petition under Rule 4 of the Rules Governing Section 2254 Proceedings and found that all four of Petitioner's grounds for relief survived screening. ECF No. 4. Respondent Warden Michael Meisner ("Respondent") answered the petition, ECF No. 9, which, under the Court's screening order, triggered a briefing schedule in support of and in opposition to the petition, ECF No. 4 at 8. All briefs have now been submitted, ECF Nos. 20, 26, 32, and the matter is ripe for the Court's review. For the reasons set forth below, the Court finds that the petition is without merit and, therefore, will deny it. The action will accordingly be dismissed with prejudice.

## 2.    FACTUAL BACKGROUND

In November 2012, Mount Pleasant Police Officer John Garner ("Garner") responded to a report of an armed robbery at 11:53 p.m. outside a motel in Racine, Wisconsin. *State v. Higgenbottom*, 900 N.W.2d 343, 2017

WL 2192108, ¶ 2 (Wis. Ct. App. May 17, 2017); ECF No. 26 at 2; ECF No. 14-1 at 8. The victim, "Mike," told Garner that he went to the motel to meet "Autumn," a woman he met through an online dating service. *Higgenbottom*, 2017 WL 2192108, ¶ 2. When Mike exited his truck at the motel, two men in winter hats with scarves or masks over their faces robbed him. *Id.* One man had a silver handgun. *Id.* Mike believed that Autumn had set him up. *Id.* He described Autumn as Italian with dark hair and crooked teeth, and he described the car she drove "as a newer, dark-colored, large-bodied, low-wheel-profile BMW." *Id.* Garner issued a bulletin. *Id.*

A few hours later, according to contemporaneous police reports, Mount Pleasant Police Officers Francisco Jaramillo ("Jaramillo") and Matthew Soens ("Soens") were responding to an unrelated incident when they "saw a larger dark colored BMW 7 series going east," which "matched the description of a vehicle driven by a female who may have been involved in the armed robbery of a patron earlier in the night at the America's Best Value Inn." ECF No. 14-4 at 99; *id.* at 101 (Jaramillo's account that the BMW "matched the description of a vehicle that was used in a robbery in an ongoing investigation"). Soens could not see who was inside the BMW because "the vehicle's windows were tinted." *Id.* at 99. Jaramillo and Soens caught up to the BMW, confirmed again that the windows were tinted and that they could not see the passengers, and activated their emergency lights to pull the vehicle over in a parking lot in Racine. *Id.* at 99. Jaramillo specifically described the BMW as a "unique vehicle with unique characteristics" and the windows as "extremely dark tinted." *Id.* at 101.

After approaching the vehicle, both Jaramillo and Soens noticed that the female passenger matched the description of Autumn, "the suspect linked to th[e] robbery." *Id.* at 103; *id.* at 99. Jaramillo detected the odor of

alcohol and administered field sobriety tests to Petitioner, the driver, who passed the tests. *Id.* at 101. Jaramillo then told Petitioner to return to his vehicle. *Id.* Upon discussing with Soens the fact that Ferguson matched Autumn's description, Jaramillo re-approached the passenger side of the vehicle to ask Ferguson to exit the vehicle. *Id.* at 103. While Ferguson was exiting the vehicle, Jaramillo observed "the silver plated barrel of a handgun," which was "sticking out from underneath the front passenger seat." *Id.* at 103; *id.* at 99 ("Jaramillo saw a silver colored handgun . . . as Ferguson exited the vehicle."). The officers knew that the robbery had involved "a chrome or silver colored handgun." *Id.* at 99. Accordingly, Jaramillo placed Ferguson in handcuffs and arrested her. *Id.* Jaramillo yelled to Petitioner to exit the vehicle, and Soens arrested Petitioner. *Id.* at 103. The officers placed Ferguson in Jaramillo's vehicle and Petitioner in Soens' vehicle. *Id.*

At some point during these events, Petitioner volunteered that the gun, which proved to be fully loaded, was his. *Higgenbottom*, 2017 WL 2192108, ¶ 3. Jaramillo found two wrap-around ear-warmers and two winter caps in the car, and he found cash in denominations consistent with money taken from Mike in Petitioner's pocket. *Id.* Jaramillo brought Petitioner and Ferguson, as well as the recovered items, back to the Mount Pleasant Police Department for processing. ECF No. 14-4 at 103.

Mount Pleasant police later discovered that records from Ferguson's cell phone on the night of the robbery showed frequent text messages between her phone and Mike's. *Higgenbottom*, 2017 WL 2192108, ¶ 4. Between 11:22 p.m. and 11:47 p.m., cell phone geospatial location plots placed Petitioner within a mile of the motel. *Id.* Surveillance video retrieved from a business near the motel showed two men approaching the robbery

scene within two minutes of the robbery occurring. *Id.* One wore a three-quarter-length black pea coat like the one that Petitioner was wearing when he was arrested. *Id.* Both men wore stocking caps that matched the ones found in Petitioner's car. *Id.* Petitioner was charged with armed robbery as a party to a crime, felon in possession of a firearm, and carrying a concealed weapon. *Id.*, ¶ 1.

A jury trial was held. ECF No. 9-8. After Garner, Jaramillo, and Mike testified to the events set forth above, *id.* at 40–89, Ferguson took the stand. Ferguson testified that, at the time of the robbery, she and Petitioner were in a romantic relationship. *Id.* at 93. Petitioner drove a BMW during this time. *Id.* at 94. During their romantic relationship, Ferguson "went along with" Petitioner's plan that she pursue a "sugar daddy type thing" with other men in order to make extra money. *Id.* Petitioner made Ferguson a profile on the Internet, where she met Mike. *Id.* at 96. Petitioner would message Mike on Ferguson's behalf and set up dates for her with Mike. *Id.* On one occasion, Mike gave Ferguson money to help her with her rent, which she gave to Petitioner. *Id.* at 97–98. Eventually, Mike expressed interest in meeting Ferguson at a motel. *Id.* at 98. Ferguson testified that she did not want to meet Mike at a motel, but Petitioner wanted to arrange the motel meeting in order to "set up a robbery" of Mike. *Id.* at 99–100.

The night of the robbery, Ferguson testified that, at Petitioner's direction, she texted Mike that she was in the motel lobby (although she was at home) so that Mike would get out of his vehicle. *Higgenbottom*, 2017 WL 2192108, ¶ 4; ECF No. 9-8 at 101. Following the robbery, Petitioner came to Ferguson's house in the BMW and picked her up with another man in the car who she knew as "Twenty." ECF No. 9-8 at 101–02. Ferguson rode with Petitioner to drop Twenty off and, on the way back to her house, the

two were pulled over. *Id.* at 102–03. While she was still in the car, Petitioner asked Ferguson to delete messages off her phone. *Id.* at 105. Following Petitioner's and Ferguson's arrests, Ferguson initially told Mount Pleasant police that she and Petitioner were in Milwaukee all night, but she told the truth later "when all the phone data came back." *Id.* at 105–06. Finally, Ferguson testified that when Petitioner left her house, where he had been prior to the robbery, he had his cell phone with him. *Id.* at 127.

After Ferguson, Daniel Schauer ("Schauer"), an investigator with the Mount Pleasant Police Department, took the stand. *Id.* at 128. Schauer was assigned to assist the prime investigator in investigating the robbery. *Id.* Schauer testified that he was able to identify Petitioner from the surveillance video based on the black pea coat that Petitioner was wearing when he was arrested and the winter hat that was consistent with the hat discovered in Petitioner's vehicle. *Id.* at 130, 133. Schauer testified that the surveillance video showed Petitioner holding a "whitish type object in his left hand" that could be consistent with the cell phone that was recovered when Petitioner was arrested. *Id.* at 136. He also testified as to the denominations of currency recovered from Petitioner. *Id.* at 137.

Next, the prime investigator of the robbery, John Rusfeldt ("Rusfeldt") of the Mount Pleasant Police Department, took the stand. *Id.* at 141–42. Rusfeldt testified to the process of obtaining cell phone records for Ferguson and Petitioner. *Id.* at 145. Because text messages had been deleted from Ferguson's and Petitioner's phones, Rusfeldt hoped to use a subpoena or warrant to get "[a] relationship of one number" contacting the other and the "approximate location" of where the cell phones were when calls or text messages were made or received. *Id.* Rusfeldt was able, however, to recover text messages from Mike's phone between Mike and Ferguson. *Id.* at 149.

Case 2:21-cv-01256-JPS   Filed 03/13/24   Page 5 of 31   Document 33

Rusfeldt testified that Ferguson's cell phone records showed that she was in Kenosha—not Milwaukee—at the times she said she was in Milwaukee in her initial statement. *Id.* at 150–51. Rusfeldt also testified that some of Petitioner's DNA was collected from the recovered clothing items, *id.* at 149–50, but the trial court instructed the jury to disregard that testimony on the basis that Rusfeldt is not a DNA expert, *id.* at 153–57. After the trial court struck the testimony, the State questioned Rusfeldt a second time regarding his experience reviewing DNA reports from the Crime Lab. *Id.* at 165–66.

Finally, Robert Bechtold ("Bechtold"), a criminal analyst with the Wisconsin Department of Justice, testified that he conducted a geospatial analysis based on the cell phone records to "put[] locations and events on a map" in the context of the robbery. *Id.* at 167–68. Bechtold testified that he was able to determine that Petitioner's cell phone "was in the general vicinity" of the motel where the robbery occurred between 11:07 p.m. and 11:47 pm. on the night in question. *Id.* at 179. Following the trial, the jury found Petitioner guilty on all three charges. *Higgenbottom*, 2017 WL 2192108, ¶ 1. Petitioner was sentenced to a term of 17 years' imprisonment and 10 years' extended supervision. ECF No. 1 at 2.[1]

### 3. PROCEDURAL BACKGROUND

Petitioner filed a direct appeal. Therein, he argued (1) that the trial court erroneously exercised its discretion in denying his motion for a

---

[1] *See also State of Wisconsin v. Delante D. Higgenbottom*, Milwaukee Cnty. Case No. 2013CF000270, https://wcca.wicourts.gov/caseDetail.html?caseNo=2013CF000270&countyNo=51 &index=0&mode=details (last visited Mar. 13, 2024); *State of Wisconsin v. Delante D. Higgenbottom*, Milwaukee Cnty. Case No. 2012CF001393, https://wcca.wicourts.gov/caseDetail.html?caseNo=2012CF001393&countyNo=51 &index=0&mode=details (last visited Mar. 13, 2024).

mistrial after Rusfeldt testified that Petitioner's DNA was found on hats and ear-warmers recovered from Petitioner's car; and (2) ineffective assistance of trial counsel for failure to renew the motion for a mistrial after Rusfeldt gave second DNA testimony, failure to obtain copies of search warrants that would have allowed for a motion to suppress Petitioner's cell phone records, failure to question the State's witnesses about inconsistencies between investigative reports and officer testimony, failure to safeguard information about defense strategies and weaknesses in the State's case prior to trial, and failure to challenge the initial traffic stop. *Higgenbottom*, 2017 WL 2192108, ¶¶ 6, 12. The Wisconsin Court of Appeals addressed and rejected each of Petitioner's bases for appeal. *Id.*, ¶ 1.

On petition to the Wisconsin Supreme Court, Petitioner's postconviction counsel filed a no-merit report, which Petitioner supplemented with additional "constitutional claims of ineffective assistance of counsel, *Brady* violation,[2] and 4th Amendment violation." ECF No. 1 at 3. On September 11, 2017, the Wisconsin Supreme Court denied review. *State v. Higgenbottom*, 904 N.W.2d 123 (Wis. 2017).

On September 18, 2018, Petitioner filed a Wis. Stat. § 974.06 motion for postconviction relief. ECF No. 1 at 4; *State v. Higgenbottom*, 962 N.W.2d 263, 2021 WL 1991235 (Wis. Ct. App. May 19, 2021). Therein, he argued that his trial counsel was ineffective for not challenging the initial stop and search of his vehicle. *Higgenbottom*, 2021 WL 1991235, ¶ 6. He also alleged that his postconviction counsel was ineffective for not raising claims related to the State's withholding of allegedly void search warrants for his cell phone records and using that evidence at trial. *Id.* Finally, he asserted that

---

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963).

his trial counsel was ineffective by failing to impeach Jaramillo regarding his discovery of the gun in Petitioner's car and failing to object to the trial court's use of allegedly inaccurate information "pertain[ing] to [Jaramillo's] reasons for asking Ferguson to get out of the vehicle during the stop." *Higgenbottom*, 2021 WL 1991235, ¶ 6 & n.2. The Wisconsin Court of Appeals affirmed the trial court's denial of the motion. *Id.*, ¶ 1. Petitioner petitioned for review to the Wisconsin Supreme Court, which denied review on October 18, 2021. *State v. Higgenbottom*, 2021 WL 9781627 (Wis. Oct. 18, 2021).

Petitioner seeks habeas relief on the following grounds: (1) Petitioner's trial counsel was ineffective by failing to obtain and examine the allegedly void warrant for his cell phone, which would have allowed counsel to suppress illegally obtained evidence on which the State relied heavily to convict Petitioner; (2) Petitioner's postconviction counsel was ineffective on direct appeal by failing to challenge trial counsel's flawed strategy, failing to raise a claim under *Brady*, 373 U.S. 83, and failing to raise a newly-discovered evidence claim when it was discovered that the State suppressed an allegedly void warrant for Petitioner's cell phone which, if disclosed before trial, would have changed the outcome of the trial; (3) Petitioner's trial counsel was ineffective by failing to challenge the stop of Petitioner's vehicle, Petitioner's postconviction counsel was ineffective by failing to challenge (or by inadequately raising) trial counsel's ineffectiveness as to claims regarding the traffic stop, and that the state courts misapplied the *Terry*[3] "reasonable suspicion" standard and the

---

[3]*See Terry v. Ohio*, 392 U.S. 1 (1968).

*Strickland*[4] standard in assessing this claim; and (4) Petitioner's trial counsel was ineffective by failing to suppress illegally obtained phone records, which violated Petitioner's due process rights, and the state courts' decisions on this claim reflects an unreasonable determination of the facts in light of the evidence presented. ECF No. 1 at 14–31; ECF No. 4 at 3–4.

## 4.  LEGAL STANDARD

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)).

---

[4] *See Strickland v. Washington*, 466 U.S. 668 (1984).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

5.      **ANALYSIS**[5]

5.1      **Procedural Default as a General Matter**

Even though a constitutional claim in a federal habeas petition has been exhausted, a court is still generally barred from considering the ground if the petitioner has procedurally defaulted on the claim. *See Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002). A state prisoner procedurally defaults on a constitutional claim in a habeas petition when he fails to raise the claim in the state's highest court in a timely fashion or in the manner prescribed by state law. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (citing *Engle v. Isaac*, 456 U.S. 107, 125–26 & n.28 (1982) and *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991), *abrogated in part by*

---

[5]The Court must commend both Petitioner and Respondent on the excellent quality of their briefs. Petitioner shows superb command and understanding of complicated § 2254 case law, and his briefs set him apart from many litigants that come before the Court seeking habeas relief. For her part, Respondent's counsel submitted exactly the sort of high-quality brief the Court would expect to receive: a brief that argues the procedural issues but still thoroughly analyzes the merits in the alternative. Unfortunately, the Court rarely receives such briefs from the Wisconsin Department of Justice. *See, e.g.*, *Stallings v. Cromwell*, No. 22-CV-161-JPS, ECF No. 25 at 2–3 (E.D. Wis. Sept. 5, 2023). The Court hopes that the briefing in this case becomes the standard.

*Martinez v. Ryan*, 566 U.S. 1 (2012)); *Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000).

Put otherwise, a petitioner has procedurally defaulted if he "violat[ed] a state procedural rule which would constitute adequate and independent grounds to bar direct review in the United States Supreme Court." Brian R. Means, Federal Habeas Manual § 9B:1, 1131–32 (2019 ed.). "Thus, a prisoner who fails to satisfy the state procedural requirements forfeits his right to present his claim in federal habeas." *Id*. at 1132 (citing *Murray v. Carrier*, 477 U.S. 478, 485–92 (1986)). This is so unless the petitioner can show "cause and prejudice or actual innocence." *Id*. (citing *Coleman*, 501 U.S. at 729–30). This doctrine applies "regardless of whether the default occurred at trial, on appeal, or on state collateral review." *Id*. (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)).

### 5.2 Grounds One and Four

Respondent argues that Grounds One and Four, which challenge Petitioner's trial counsel's failure to obtain the allegedly void search warrant and/or move to suppress the cell phone records, are procedurally defaulted for two alternative reasons. First, he contends that Grounds One and Four are procedurally defaulted because Petitioner failed to raise them to the Wisconsin Supreme Court on direct appeal. ECF No. 26 at 14 (citing ECF No. 9-3 at 1–14).[6] Petitioner argues that this does not matter because he later raised Grounds One and Four in his § 974.06 motion. ECF No. 20 at 7.

---

[6]Presumably, Respondent calls this a procedural default issue and not an exhaustion issue because it is now too late for Petitioner to appeal the decision on his direct appeal to the Wisconsin Supreme Court, making the issue one of fair presentment. *See* Wis. Stat. § 808.10 (a petition for review with the Wisconsin Supreme Court must be filed within 30 days of the Wisconsin Court of Appeals' decision); *see also O'Sullivan*, 526 U.S. at 848.

And on the § 974.06 motion, Petitioner did raise these Grounds to the Wisconsin Supreme Court. ECF No. 9-6 at 2–3. Nonetheless, and as a second alternative basis for procedural default, Respondent argues that, on the § 974.06 motion, the Wisconsin Court of Appeals denied relief under the doctrines set forth in *State v. Escalona-Naranjo*, 517 N.W.2d 157 (Wis. 1994) and *State v. Romero-Georgana*, 849 N.W.2d 668 (Wis. 2014), both of which the Seventh Circuit has held to be adequate and independent grounds barring federal review. ECF No. 26 at 15–17 (citing *Whyte v. Winkleski*, 34 F.4th 617, 624–28 (7th Cir. 2022)).

However, the Court agrees with Petitioner that the Wisconsin Court of Appeals, on the § 974.06 motion, did not deny relief as to Grounds One and Four on the bases of *Escalona-Naranjo* and *Romero-Georgana*. The court clearly denied relief on the basis that "a defendant may not relitigate a matter previously litigated, 'no matter how artfully the defendant may rephrase the issue.'" *Higgenbottom*, 2021 WL 1991235, ¶ 8 (quoting *State v. Witkowski*, 473 N.W.2d 512, 514 (Wis. Ct. App. 1991)). Specifically, it held that "[t]he issues related to . . . the validity of the search warrants for [Petitioner's] cell phone records were previously raised on direct appeal and cannot be relitigated." *Id.*, ¶ 9 (citing *Witkowski*, 473 N.W.2d at 514).

Therefore, these claims were rejected on res judicata grounds, given that the court "describ[ed] [the] ineffective assistance claims as a mere 're-characterization' of the arguments [previously made]." *Warren v. Baenen*, 712 F.3d 1090, 1098 (7th Cir. 2013) (citing *Witkowski*, 473 N.W.2d at 514). However, contrary to Petitioner's assertion, ECF No. 32 at 3, application of the *Witkowski* rule does not automatically mean that the federal habeas court performs a de novo review. "The application of the *Witkowski* rule means only that the court of appeals' decision on direct appeal, not its later

decision, is the decision the federal court reviews in considering a habeas petition." *Robbins v. Hepp*, No. 15-CV-1343, 2022 WL 541560, at *6 (E.D. Wis. Feb. 23, 2022) (citing *Warren*, 712 F.3d at 1098). It is only when the court of appeals' later decision contains an "erroneous[] belie[f] that the issue had been addressed on direct appeal," when in fact it was not, that de novo review applies. *Warren*, 712 F.3d at 1098 (citing *Cone v. Bell*, 556 U.S. 449, 460 (2009)).

The Wisconsin Court of Appeals' holding on review of the § 974.06 motion that the issue had already been litigated on direct appeal was not erroneous. Thus, the Court turns to the Wisconsin Court of Appeals' decision on direct appeal, at which juncture the court fully considered the issue under *Strickland*, and it applies AEDPA deference to that decision. *Higgenbottom*, 2017 WL 2192108, ¶¶ 13, 17–19 (citing *Strickland*, 466 U.S. at 687). On direct appeal, the Wisconsin Court of Appeals reasoned that, even assuming that the cell phone records would have been suppressed, its "confidence in the outcome of the trial [wa]s not undermined." *Id.*, ¶ 19. This was because "[a]mple other evidence supported a guilty verdict," including the surveillance video, the distinctive BMW in which Ferguson accompanied Petitioner, the silver gun, the suspicious headwear, and Ferguson's testimony. *Id.*

The Wisconsin Court of Appeals correctly stated the standard set forth in *Strickland* by analyzing whether its "confidence in the outcome of the trial [would be] . . . undermined" if the cell phone records were kept out of evidence at trial. *Id.; see also id.*, ¶ 13 ("To prove prejudice, the defendant must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome.'") (quoting *Strickland*, 466 U.S. at 694). Thus, the decision is not contrary to clearly established federal law. *Thill v. Richardson*, 996 F.3d 469, 477 (7th Cir. 2021); 28 U.S.C. § 2254(d)(1); *Brown*, 544 U.S. at 141. Petitioner contends instead that the Wisconsin Court of Appeals unreasonably applied, as pertinent here, the prejudice prong of *Strickland*. ECF No. 20 at 19–20.[7]

"A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (citing *Strickland*, 466 U.S. at 687–88, *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011), and *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009)).

"To satisfy the second *Strickland* element, [the petitioner] must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable." *Id.* (citing *Jones*, 635 F.3d at 915 and *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006)). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Id.* (quoting *Adams*, 453 F.3d at 435). "A petitioner cannot prevail by showing simply that the state court's decision was wrong." *Thill*,

---

[7]Petitioner also argues the first prong of *Strickland*: that his trial counsel's performance was deficient. ECF No. 20 at 16–29. However, if a petitioner's arguments "concerning the prejudice prong fail," courts need not consider the deficiency prong. *Thill*, 996 F.3d at 476–77 (citing *Gage v. Richardson*, 978 F.3d 522, 527 (7th Cir. 2020) and *Taylor v. Bradley*, 448 F.3d 942, 949 (7th Cir. 2006) (noting that "it is unnecessary and undesirable for [a habeas court] to consider the attorney performance facet of the analysis" when "an ineffectiveness claim may be disposed of on the basis of a lack of prejudice")).

996 F.3d at 478 (quoting *Makiel v. Butler*, 782 F.3d 882, 896 (7th Cir. 2015)). "Rather, 'we ask whether the state court decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Dassey v. Dittman*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc)) (internal quotation marks omitted).

Against this backdrop, the Court finds that the Wisconsin Court of Appeals reasonably applied the prejudice prong of *Strickland*. Petitioner argues that the Wisconsin Court of Appeals' conclusion that ample other evidence supported a guilty verdict was unreasonable because "the state used [Petitioner's] cell phone records to assemble its case." ECF No. 20 at 20. Specifically, the State used the cell phone records to place Petitioner in the area of the robbery, resubmit charges against Petitioner for armed robbery, induce cooperation from Ferguson, and corroborate Ferguson's testimony. *Id.* (citing ECF No. 14-1 at 3, 5, 8–9 and ECF No. 14-2 at 3–4). Petitioner further contends that "Ferguson's testimony itself was inadmissible, because it was induced and corroborated by the phone records." *Id.* at 32 (citing ECF No. 14-2 at 3–4).

However, the documents to which Petitioner cites do not show that the Wisconsin Court of Appeals' decision lacked justification such that "fair-minded jurists could only conclude that" inclusion of the cell phone records in evidence prejudiced Petitioner. *Thill*, 966 F.3d at 479 (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Rusfeldt's November 10, 2012 report states that he chose to resubmit charges against Ferguson "as it appears she assisted in this robbery by sending text messages to the victim." ECF No. 14-1 at 3. He notes that, "[a]dditionally, . . . [h]er cell phone records show" that her statement about being in Milwaukee was incorrect. *Id.* But

the Court cannot reach the conclusion that Petitioner wants it to reach—that Ferguson would not have cooperated but for the cell phone records, rendering the Wisconsin Court of Appeals' decision lacking in justification—based on the facts that police were already aware that Ferguson was a suspect, Rusfeldt had independently searched and downloaded Ferguson's text messages from Mike's phone, and her text messages to Mike are the main reason that Rusfeldt cites for recharging Ferguson and bringing her back in for questioning. *See, e.g.*, *United States v. Justice*, 881 F. Supp. 387, 393 (S.D. Ind. 1994), *aff'd*, 70 F.3d 1275 (7th Cir. 1995) (analyzing, inter alia, whether evidence other than the allegedly illegally-obtained evidence was used to induce a witness to cooperate and whether witness was discovered due to the illegal search).

Even so, and parenthetically, while Ferguson testified that she changed her story about being in Milwaukee after the phone data came back, the record shows that it was a warrant for data retrieval from Petitioner's Apple cell phone that was void, not a warrant for Ferguson's own cell phone records, or even the warrants from the cell phone carriers. *Higgenbottom*, 2017 WL 2192108, ¶ 18 (discussing void warrant for data retrieval from Apple); ECF No. 14-1 at 4 (Rusfeldt's report regarding one "cell phone" subject to void Apple warrant); ECF No. 9-8 at 145–46 (Rusfeldt's testimony regarding the fact that AT&T carrier records are used for relationship and location monitoring but that the carrier does not have the contents of the text messages from the cell phones). Rusfeldt testified, and his reports reflect, that he reviewed and requestioned Ferguson regarding her *own* cell phone records, not those of Petitioner. ECF No. 9-8 at 150–51; ECF No. 14-1 at 3. The record does not support Petitioner's

contention that Ferguson's testimony was induced by records obtained using the void Apple warrant for data retrieval from his own cell phone.

Similarly, Rusfeldt's November 10, 2012 report also states, consistent with the Wisconsin Court of Appeals' conclusion, that he was resubmitting charges against Petitioner for armed robbery "as it appears he was one of the subjects in the video *and* his cell phone shows him in the area of the robbery." ECF No. 14-1 at 3 (emphasis added). Again, as with Ferguson's testimony, the Wisconsin Court of Appeals considered the fact that the jury heard and saw evidence of the surveillance video, as well as the fact that clothing matching that worn in the surveillance video was found on Petitioner and in his car mere hours after the robbery. The Wisconsin Court of Appeals found this evidence sufficient to support the guilty verdict. *Higgenbottom*, 2017 WL 2192108, ¶¶ 13, 17–19. Based on these considerations, the Court cannot find that the decision was so lacking in justification that there was an error "beyond any possibility for fairminded disagreement." *Thill*, 996 F.3d at 480 (quoting *Richter*, 562 U.S. at 103). Accordingly, Grounds One and Four are denied.

### 5.3    Ground Two

Respondent argues that Ground Two is procedurally defaulted. ECF No. 26 at 23. As to this Ground, the Court agrees. In Ground Two, Petitioner criticizes postconviction counsel for failing to challenge trial counsel's flawed strategy, failing to raise a claim under *Brady*, 373 U.S. 83, and failing to raise a newly-discovered evidence claim when it was discovered that the State suppressed an allegedly void warrant for Petitioner's cell phone. In his brief, Petitioner clarifies that the *Brady* claim is part and parcel of the newly-discovered evidence claim as to the allegedly suppressed warrant for the cell phone records. ECF No. 20 at 21 (arguing that postconviction

counsel was ineffective by failing to raise "a *Brady* and/or Newly Discovered Evidence Claim, when it discovered the State suppressed a void warrant for [Petitioner's] cell phone"). Specifically, Petitioner argues that "the prosecutor withheld the warrant" given that his postconviction counsel "had to request the warrant in a motion to compel post-conviction discovery." *Id.* at 17 (citing ECF No. 9-10 at 14–15); ECF No. 9-3 at 14 (Petitioner framing the *Brady* claim as related to the void warrant in his supplement to no-merit petition for review). Petitioner also elaborates on the flawed strategy component of Ground Two. Before the circuit court, Petitioner's trial counsel testified that she did not move to suppress the phone records because she thought they would substantiate that Petitioner was in Milwaukee at the time of the robbery. ECF No. 20 at 16–17 (citing ECF No. 9-9 at 21). Petitioner alleges that his postconviction counsel was deficient by failing to challenge this false testimony. *Id.* at 21–22.

Unlike Grounds One and Four, the Wisconsin Court of Appeals affirmed the circuit court's denial of relief as to the claims underlying Ground Two on the bases of the doctrines set forth in *Escalona-Naranjo*, 517 N.W.2d 157 and *Romero-Georgana*, 849 N.W.2d 668. *Higgenbottom*, 2021 WL 1991235, ¶ 6 (describing Petitioner's claims of ineffectiveness of postconviction counsel as "related to the State's withholding of 'void' search warrants for [Petitioner's] cell phone records and using that evidence at trial"); *id.*, ¶¶ 8–10 (discussing ineffective assistance of trial counsel claims and then holding that "[a]s for the other issues raised in [Petitioner's] postconviction motion, he has not demonstrated a sufficient reason for failing to raise them earlier").

*Escalona-Naranjo* holds that § 974.06 "bars successive postconviction motions unless the defendant can demonstrate a 'sufficient reason' for

Case 2:21-cv-01256-JPS   Filed 03/13/24   Page 18 of 31   Document 33

failing to raise the claim earlier." *Garcia v. Cromwell*, 28 F.4th 764, 767 (7th Cir. 2022) (quoting *Escalona-Naranjo*, 517 N.W.2d at 162–63). Ineffective assistance of postconviction counsel may constitute such a sufficient reason, but only when the movant pleads "factual allegations showing that the defaulted claims were 'clearly stronger' than the issues postconviction counsel chose to present." *Id.* (quoting *Romero-Georgana*, 849 N.W.2d, ¶¶ 45–46). In other words, the movant must demonstrate that the claims it contends should have been raised—and which postconviction counsel is allegedly ineffective for not raising—are clearly stronger than the claims that postconviction counsel did bring.

As noted, the Seventh Circuit holds that application of *Escalona-Naranjo* and *Romero-Georgana* constitute adequate and independent grounds barring federal habeas review. *See Whyte*, 34 F.4th at 624 ("This court has held that *Escalona-Naranjo*'s bar constitutes an adequate and independent state procedural ground, which forecloses federal review.") (citing *Garcia*, 28 F.4th at 767 and *Perry v. McCaughtry*, 308 F.3d 682, 690, 692 (7th Cir. 2002)); *id.* at 625 ("'*Romero-Georgana*'s pleading standard' is an 'independent and adequate state procedural ground'") (quoting *Garcia*, 28 F.4th at 767).

Here, the Wisconsin Court of Appeals plainly held that Petitioner "failed to show with specificity why and how his new claims were 'clearly stronger' than the ones actually raised by postconviction counsel.'" *Higgenbottom*, 2021 WL 1991235, ¶ 10 (quoting *Romero-Georgana*, 849 N.W.2d, ¶¶ 45–46). The court also held that Petitioner "failed to reveal how he was prejudiced in light of the other evidence against him," which it characterized as "overwhelming":

This included (1) cell phone records placing him near the scene of the armed robbery; (2) a surveillance video placing a man with the same distinctive coat as [Petitioner] near the scene of the armed robbery; (3) items found in [Petitioner's] vehicle (gun, hats, ear-warmers) consistent with the victim's description of what the robbers used/wore; (4) [Petitioner's] admission that the gun in the vehicle was his; (5) cash found in [Petitioner's] pocket consistent with the victim's account of what was taken; and (6) Ferguson's testimony against Petitioner.

*Id.*, ¶ 10 & n.3. Thus, Respondent is correct that Ground Two is procedurally defaulted.

As Petitioner notes,[8] ECF No. 20 at 10, "[p]rocedural default may be excused, however, if the petitioner can show both cause for and prejudice from the default, or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice." *Bolton v. Akpore*, 730 F.3d 685, 696 (7th Cir. 2013) (collecting cases).

"Cause requires a showing of 'some type of external impediment' that prevented [the petitioner] from presenting his claims." *Garcia*, 28 F.4th at 775 (quoting *Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012)). Errors by postconviction counsel on direct appeal "cannot serve as cause to excuse [a petitioner's] *own* default" at the § 974.06 posture. *Id.* However, with

---

[8]Petitioner acknowledges the cause and prejudice doctrine, and so he is not harmed by Respondent's delay in asserting the affirmative defense (i.e., by the fact that the defense was not raised in Respondent's answer, ECF No. 9 at 3). *See Whyte*, 34 F.4th at 626 ("We will generally find that the failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it.") (quoting *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019) (internal quotation marks omitted)). Respondent raised the issue in his opposition, ECF No. 26 at 25 n.7, giving Petitioner an opportunity to address it on reply. Further, since his ruling on the § 974.06 motion, Petitioner has been aware that Ground Two is subject to procedural default under *Romero-Georgana*. *See Whyte*, 34 F.4th at 626.

respect to *Brady* claims, a petitioner may show cause "when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence." *Banks v. Dretke*, 540 U.S. 668, 692 (2004). Here, Petitioner knew about the allegedly void warrants during his state § 974.06 proceedings, and so that fact does not establish cause either.

Even if he had identified an adequate cause for the procedural default, however, Petitioner has not established prejudice, which is interpreted as "any reasonable probability of a different result." *Garcia*, 28 F.4th at 775. Like a *Strickland* claim, or the requisite showing of prejudice to excuse a procedural default, a *Brady* claim also requires a showing of prejudice. *Banks*, 540 U.S. at 691 (the "essential elements of a *Brady* prosecutorial misconduct claim" are "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued") (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). The prejudice element is also referred to as the "'materiality' inquiry." *Strickler*, 527 U.S. at 282. Indeed, "prejudice within the compass of the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for *Brady* purposes." *Id.* (quoting *Stickler*, 527 U.S. at 282). And "[e]vidence is material under *Brady* 'if there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Bell*, 870 F.3d 622, 629 (7th Cir. 2017) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995)).

For the reasons explained above as to Grounds One and Four, the Wisconsin Court of Appeals' conclusion as to the claims underlying Ground Two—that Petitioner suffered no prejudice because the evidence

against him was "overwhelming"—was reasonable and adequately justified. *Higgenbottom*, 2021 WL 1991235, ¶ 10 & n.3. Thus, Petitioner has not shown that he would suffer prejudice if the Court does not excuse the procedural default. For the same reasons, he has not established that a "fundamental miscarriage of justice" would occur, because he has not demonstrated "that no reasonable trier of fact would have found him guilty but for the error allegedly committed by the state court." *Bolton*, 730 F.3d at 697 (citing *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995) and *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004)). Instead, the Court has already specifically concluded that the Wisconsin Court of Appeals' justifications and considerations were sufficient and did not cause error "beyond any possibility for fairminded disagreement." *See supra* Section 5.3 (quoting *Thill*, 995 F.3d at 480). Accordingly, Ground Two is denied.

### 5.4 Ground Three

In Ground Three, Petitioner argues that his trial counsel was ineffective by failing to challenge the stop of Petitioner's vehicle, that his postconviction counsel was ineffective by failing to challenge (or by inadequately raising) his trial counsel's ineffectiveness as to claims regarding the traffic stop, and that the state courts misapplied the standards set forth in *Terry*, 392 U.S. 1 and *Strickland*, 466 U.S. 668 in assessing this claim. Respondent argues that all three components of Ground Three are procedurally defaulted.

Beginning with the claim that postconviction counsel was ineffective, the Court agrees with Respondent that the claim may be procedurally defaulted. Petitioner raised the claim in his § 974.06 motion and, like his other claims of ineffective assistance of postconviction counsel,

the Wisconsin Court of Appeals affirmed the denial of relief on the bases of *Escalona-Naranjo*, 185 Wis. 2d 168 and *Romero-Georgana*, 360 Wis. 2d 522. *Higgenbottom*, 2021 WL 1991235, ¶ 9–10 ("*As for the other issues raised in [Petitioner's] postconviction motion, he has not demonstrated a sufficient reason for failing to raise them earlier.*") (emphasis added); ECF No. 9-4 at 19 (raising ineffectiveness of postconviction counsel for failure to challenge the traffic stop).

However, the Wisconsin Court of Appeals' decision as to this particular aspect of the alleged ineffectiveness of postconviction counsel is less clear than the allegations regarding the cell phone records. As noted above, the Wisconsin Court of Appeals summarized Petitioner's ineffectiveness of postconviction counsel claims as relating only "to the State's withholding of 'void' search warrants for his cell phone records and using that evidence at trial." *Higgenbottom*, 2021 WL 1991235, ¶ 6. Based on the Wisconsin Court of Appeals' statement a few paragraphs later that all "other issues raised in" the motion—except for ineffectiveness of trial counsel, which claims were barred based on *Witkowski*, *see supra* Section 5.2—were barred under *Romero-Georgana*, it is possible that the Wisconsin Court of Appeals' summary of Petitioner's allegations of ineffectiveness of postconviction counsel inadvertently omitted the traffic stop claims, but that those claims were nonetheless considered. *Higgenbottom*, 2021 WL 1991235, ¶ 9.

But, because the issue is not clear, the Court will apply de novo review to this claim in the event that the claim, though exhausted, missed the Wisconsin Court of Appeals' consideration. *See Warren*, 712 F.3d at 1096–98 (citing *Cone*, 556 U.S. at 472). Even applying de novo review, however, Petitioner does not satisfy *Strickland*, 466 U.S. at 687–88, and his

postconviction counsel was not ineffective for failing to raise or for inadequately challenging trial counsel's alleged ineffectiveness as to claims regarding the traffic stop.

As to the first prong of *Strickland*—whether "counsel's performance fell below objective standards for reasonably effective representation," *Blake*, 723 F.3d at 879 (citing *Strickland*, 466 U.S. at 687–88, *Jones*, 635 F.3d at 915, and *Wyatt*, 547 F.3d at 457)—the petitioner must "identify errors 'so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Dunn v. Jess*, 981 F.3d 582, 591 (7th Cir. 2020) (quoting *Richter*, 562 U.S. at 104). "To avoid the inevitable temptation to evaluate a lawyer's performance through the distorting lens of hindsight, *Strickland* establishes a deferential presumption that strategic judgments made by defense counsel are reasonable." *Id.* (quoting *Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012)). However, "the decision must be—in fact—strategic" because "[t]he consequences of inattention rather than reasoned strategic decisions are not entitled to the presumption of reasonableness." *Id.* (quoting *Mosley*, 689 F.3d at 848).

Petitioner's trial counsel testified before the circuit court that she and Petitioner discussed whether to challenge the stop, but that counsel "[didn't] think that there was sufficient evidence to bring that type of motion" because the stop occurred in "a small town" at approximately 2:00 in the morning, at which time and place there are likely not a lot of BMWs driving by. ECF No. 9-9 at 16–17.

"The 'Sixth Amendment does not require counsel . . . to press meritless arguments before a court,' . . . and it is always good strategy to avoid wasting time or the court's attention with claims that are going nowhere." *Peterson v. Douma*, 751 F.3d 524, 533 (7th Cir. 2014) (quoting *Lilly*

*v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993)). Based on the facts surrounding Jaramillo and Soens' stop of Petitioner, postconviction counsel was not deficient for choosing not to challenge, or for inadequately challenging, trial counsel's performance because such an argument would have "go[ne] nowhere." *Id.*

"An investigatory stop not amounting to an arrest is authorized if the officer making the stop is 'able to point to specific and articulable facts' that give rise to a reasonable suspicion of criminal activity." *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994) (quoting *Terry*, 392 U.S. at 21–22 and citing *United States v. Adebayo*, 985 F.2d 1333, 1339 (7th Cir. 1993)). When analyzing "the requirement for specific and articulable facts," courts "must assess the totality of the circumstances and the reasonable inferences that may be drawn from it." *Id.* at 1225. In addition, the officers' "degree of intrusion" used to "verify or dispel their suspicions" must be "reasonably related to the known facts." *Id.* at 1224–26 (citing *Terry*, 392 U.S. at 19–20).

As summarized from contemporaneous police records *supra* Section 2, Jaramillo and Soens stopped the BMW in a parking lot in the vicinity of the Racine motel where the armed robbery occurred, within approximately three hours of the robbery. ECF No. 14-1 at 8; ECF No. 14-4 at 99. Thus, there was no geographic gap, and the temporal gap was minimal. *See Tilmon*, 19 F.3d at 1225 ("While two hours had passed since the robbery and the car was spotted 50 miles west of Eau Claire, these temporal and geographic gaps were not enough to dispel the reasonable suspicion based on the exact match of a unique automobile . . . .") (collecting cases). Both officers believed that the vehicle matched the unique description of the BMW associated with Autumn from Garner's bulletin. Trial counsel's testimony that BMWs are rare in town, particularly at around 2:00 in the morning,

substantiates the officers' belief that the vehicle they saw was unique under the circumstances. *See United States v. Chapman*, 954 F.2d 1352, 1357 (7th Cir. 1992) (reasonable suspicion to stop vehicle, as reinforced by other suspicious circumstances, where "[t]he officers knew that a bank robbery had just occurred and that the description of the getaway vehicle closely matched . . . .").

Although the windows were tinted and the officers could not see who was driving, that fact does not negate that Jaramillo and Soens were aware of specific and articulable facts related to the *car's* description when they pulled the BMW over. *See United States v. Longmire*, 761 F.2d 411, 420 (7th Cir. 1985) ("[G]iven the specificity in the description of the car, its occupants at the time of the stop were the legitimate subjects of investigation."). In sum, Petitioner's contention that he "simply drove by in a BMW" does not align with what Jaramillo and Soens wrote in their contemporaneous reports as to the articulable and specific facts known to them at the time. ECF No. 20 at 26. Nor does his contention that any description of a car is irrelevant "because no vehicle was involved in the robbery," given that Mike described Autumn as the one who set him up for the armed robbery and gave a description to police of the vehicle he knew her to drive. *Id.* at 27.

Once Jaramillo and Soens stopped the BMW, they were able to utilize a low degree of intrusion—simply observing Ferguson and noting that she matched Autumn's description—to further verify their suspicions. ECF No. 14-4 at 99, 103. Jaramillo then decided to ask Ferguson to exit the vehicle. This level of intrusion was lawful. *See Tilmon*, 19 F.3d at 1223, 1228 (ordering individual who matched armed robbery suspect's description to

exit the vehicle to "get a closer look . . . to see if he fitted the description of the . . . robber" was justified level of intrusion).

As Jaramillo approached the passenger side of the vehicle, he noticed the silver handgun "in plain view." ECF No. 14-4 at 103. While Petitioner does not appear to challenge probable cause and focuses only on whether reasonable suspicion supported the initial stop, ECF No. 20 at 27–29, the Court notes nonetheless that the presence of the silver handgun was sufficient to develop reasonable suspicion for the investigatory stop into probable cause to arrest. The officers knew that the armed robbery involving the unique BMW had also "involved a chrome or silver colored handgun." ECF No. 14-4 at 99. The fact that the weapon matched the one used in the robbery, particularly when considered in conjunction with the matching descriptions of both Ferguson and the BMW, was sufficient to establish probable cause to arrest. *Tilmon*, 19 F.3d at 1228 ("[A]fter [the defendant] stepped out of the car and the officers could compare him with the robber's description, there was probable cause for his arrest.") (citing *United States v. Danielson*, 728 F.2d 1143, 1147–48 (8th Cir. 1984), *cert denied*, 469 U.S. 919 (1984)); *see also United States v. Williams*, 495 F.3d 810, 815 (7th Cir. 2007) (discovery of stolen handgun in plain view in car during *Terry* stop sufficient to establish probable cause to arrest).

For all these reasons, any challenge by postconviction counsel to trial counsel's strategy regarding the traffic stop is or would have been baseless. Because "failure to raise . . . a losing issue" does not amount to deficient performance under *Strickland*, the court "need not address the 'prejudice' prong" of *Strickland*. *Lilly*, 988 F.2d at 788. Petitioner's postconviction counsel was not ineffective for failing to challenge, or for inadequately challenging, trial counsel's strategy as to the traffic stop.

Respondent argues that both remaining components of Ground Three—that Petitioner's trial counsel was ineffective by failing to challenge the traffic stop and that the state courts misapplied the standards set forth in *Terry*, 392 U.S. 1 and *Strickland*, 466 U.S. 668 in assessing this claim—are procedurally defaulted. EC No. 26 at 28; *id.* at 29 n.8. Respondent contends that the ineffective assistance of trial counsel claim is procedurally defaulted because Petitioner did not raise it to the Wisconsin Supreme Court during either his direct or § 974.06 proceedings. *Id.* at 8; *see supra* note 6. As to the misapplication claim, Respondent asserts that the claim is procedurally defaulted because Petitioner did not raise it to the Wisconsin Supreme Court on his direct appeal, and he did not raise it to the Wisconsin Court of Appeals during his § 974.06 proceedings. *Id.* at 29 n.8.

The Court agrees that the ineffective assistance of trial counsel claim is procedurally defaulted. Petitioner's briefs to the Wisconsin Supreme Court during both proceedings do not couch the *Terry* issue in terms of ineffective assistance of trial counsel. ECF No. 9-6 at 22–25; ECF No. 9-3 at 14. Indeed, on direct appeal, Petitioner's supplement to his postconviction counsel's no merit petition for review does not mention the traffic stop issue at all. ECF No. 9-3 at 14. However, even if the claim were not procedurally defaulted, the Court has already conducted a de novo review of the ineffective assistance of postconviction claim, which embodies the ineffective assistance of trial counsel claim, and found such a claim without merit. For those same reasons, Petitioner is unable to show cause for and prejudice from the default, or that failure to consider the claim would result in a fundamental miscarriage of justice. *Bolton*, 730 F.3d at 696. Thus, the default is not excused.

With respect to the misapplication claim, contrary to Respondent's assertion, at a minimum, Petitioner *did* raise this claim to both the Wisconsin Court of Appeals and the Wisconsin Supreme Court during his § 974.06 proceedings when he argued that the circuit court failed to apply the six-factor standard set forth in Professor Wayne R. LaFave's treatise *Search and Seizure* (2d ed. 1987) in its reasonable suspicion analysis. ECF No. 9-4 at 36; ECF No. 9-6 at 25. Specifically, Petitioner points to a Wisconsin Supreme Court case in which the court held that these factors are "helpful" in the reasonable suspicion analysis. ECF No. 20 at 28 (citing *State v. Guzy*, 407 N.W.2d 548, 555 (Wis. 1987)).

However, the LaFave factors are not clearly established federal law as determined by the United States Supreme Court, so any alleged failure on the part of the circuit court to follow those factors cannot serve as a basis for habeas relief. 28 U.S.C. § 2254(d)(1); *Brown*, 544 U.S. at 141. Nor was any decision by the circuit court an unreasonable determination of the facts in light of the evidence presented given the findings the Court has already made on de novo review (in an analysis that considered a number of the LaFave factors) in this Section. *Id.*; *see also Guzy*, 407 N.W.2d at 554 (listing LaFave factors as "(1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation.") (citing LaFave, *Search and Seizure*, § 9.3(d), at 461 (2d ed. 1987)). For all these reasons, Ground Three is denied.

### 6.     CONCLUSION

In accordance with the foregoing analysis, Petitioner's petition for a writ of habeas corpus, ECF No. 1, will be denied. Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." To obtain a certificate of appealability, Petitioner must make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In light of the well-settled principles discussed above, no reasonable jurists could debate whether Petitioner's petition has merit. The Court will, therefore, deny Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus, ECF No. 1, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 13th day of March, 2024.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.